# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

BARBARA COLOMAR, on behalf of
herself and all others similarly situated,

        Plaintiff,

    v.

MERCY HOSPITAL, INC., and
CATHOLIC HEALTH EAST, INC.,

        Defendants.

CASE NO. 05-22409-CIV-
SEITZ/MCCALILEY

**CLASS ACTION**

_____/

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER ON
## CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   STANDARD........................................................................................ 2

III.  RECONSIDERATION OF CERTAIN ISSUES REVEALS THAT PLAINTIFF
      SATISFIES ALL CLASS CERTIFICATION REQUIREMENTS. ................................. 3

      A.   Plaintiff's Revised Class Definition Is Appropriate. ............................. 3

      B.   Plaintiff's Evidence is Sufficient to Establish the Elements for Class
           Certification Here............................................................................ 4

      C.   Statistical Evidence Is A Well-Accepted Form of Common Proof. ...................... 6

IV.   All Requirements of Rule 23(a) Are Met. ..................................................... 10

      A.   Numerosity is Satisfied. .......................................................... 10

      B.   Commonality is Satisfied............................................................ 11

      C.   Typicality is Satisfied. ........................................................... 15

      D.   Plaintiff is an Adequate Class Representative. ..................................... 16

V.    Certification Of The Class Is Proper Under Rule 23(b)(3)..................................... 16

      A.   Common Questions Predominate. ...................................................... 16

VI.   Certification of Plaintiff's Claims is Appropriate Under Rule 23(b)(2)....................... 19

VII.  CONCLUSION.................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Agan v. Katzman & Korr, P.A.,*
   222 F.R.D. 692 (S.D. Fla. 2004)............................................................................ 10, 15

*Armstead v. Pingree,*
   629 F. Supp. 273 (M.D. Fla. 1986) ..................................................................... 10

*Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.,*
   178 F. Supp. 2d 198 (E.D.N.Y. 2001) ................................................................. 9

*Burger King Corp. v. Ashland Equities, Inc.,*
   181 F. Supp. 2d 1366 (S.D. Fla. 2002) ............................................................... 3

*Capaci v. Katz & Besthoff, Inc.,*
   711 F.2d 647 (5th Cir. 1983) .............................................................................. 9

*Castaneda v. Partida,*
   430 U.S. 482 (1977)............................................................................................ 9

*Colomar v. Mercy Hosp., Inc.,*
   461 F. Supp. 2d 1265 (S.D. Fla. 2006) ........................................................... 4, 17

*Cover v. Wal-Mart Stores, Inc.,*
   148 F.R.D. 294 (M.D. Fla. 1993).......................................................................... 2

*Davis v. Southern Bell Tel. & Tel. Co.,*
   No. 89-2839-CIV-NESBITT, 1994 WL 912242 (S.D. Fla. Feb. 1, 1994) ................. 8, 12, 16

*Evans v. United States Pipe & Foundry,*
   696 F.2d 925 (11th Cir.1983) ............................................................................. 11

*Exxon Corp. v. Texas Motor Exchange, Inc.,*
   628 F.2d 500 (5th Cir. 1980) .............................................................................. 10

*Fabricant v. Sears Roebuck,*
   202 F.R.D. 306 (S.D. Fla. 2001)........................................................................... 4

*Freeman v. Motor Convoy, Inc.,*
   700 F.2d 1339 (11th Cir. 1983) ........................................................................... 8

*G.M. Brod & Co., Inc. v. U.S. Home Corp.,*
   759 F.2d 1526 (11th Cir. 1985) ........................................................................... 9

*Government Personnel Servs., Inc. v. Government Personnel Life Ins. Co.,*
   759 F. Supp. 792 (M.D. Fla. 1991)....................................................................... 2

*Hilao v. Estate of Marcos,*
   103 F.3d 767 (9th Cir. 1996) ............................................................................... 9

614370.2

## TABLE OF AUTHORITIES
### (continued)

Page

*In re Domestic Air Transp. Antitrust Litig.,*
137 F.R.D. 677 (N.D. Ga. 1991)...........................................................................7, 17

*In re Polypropylene Carpet Antitrust Litig.,*
996 F. Supp. 18 (N.D. Ga. 1997)................................................................................8

*In re Terazosin Hydrochloride Antitrust Litig.,*
203 F.R.D. 551 (S.D. Fla. 2001)......................................................................... passim

*In re Terazosin Hydrochloride Antitrust Litig.,*
223 F.R.D. 666 (2004)...............................................................................................6

*In re Terazosin Hydrochloride Antitrust Litig.,*
350 F.3d 1181 (11th Cir. 2003) .................................................................................6

*In the Matter of Prince,*
85 F.3d 314 (7th Cir. 1996) .....................................................................................11

*Int'l Bhd. of Teamsters v. United States,*
431 U.S. 324 (1977)...................................................................................................8

*Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,*
716 F.2d 833 (11th Cir. 1983) ...................................................................................9

*Klay v. Humana, Inc.,*
382 F.3d 1241 (11th Cir. 2004) ...............................................................................16

*Kornberg v. Carnival Cruise Lines, Inc.,*
741 F.2d 1332 (11th Cir. 1984) .........................................................................3, 15

*Leszczynski v. Allianz Ins.,*
176 F.R.D. 659 (S.D. Fla. 1997)..............................................................................11

*Maldonado v. Ochsner,*
237 F.R.D. 145 (E.D. La. 2006)...............................................................................18

*Painewebber Income Props. Three Ltd. P'ship v. Mobil Oil Corp.,*
902 F. Supp. 1514 (M.D. Fla. 1995)...........................................................................2

*Pottinger v. City of Miami,*
720 F. Supp. 955 (S.D. Fla. 1989) .............................................................................3

*Processed Plastic Co. v. Warner Communications, Inc.,*
675 F.2d 852 (7th Cir. 1982) .....................................................................................9

*Quinn v. BJC Health Sys.,*
No. 22052-821A (Mo. Cir. Ct, March 2, 2007)....................................................17, 18

*Schwab v. Philip Morris USA, Inc.,*

614370.2

**TABLE OF AUTHORITIES**
(continued)

Page

449 F. Supp. 2d 992 (E.D.N.Y. 2006) .................................................................. 6

*Shin v. Cobb County Bd. of Educ.*,
248 F.3d 1061 (11th Cir. 2001) ..................................................................... 1, 2

*Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*,
832 A.2d 501 (Pa. Super. Ct. 2003).............................................................. 18, 19

*United States v. 449 Cases Containing Tomato Paste*,
212 F.2d 567 (2d Cir. 1954)............................................................................. 9

*United States v. Fior D'Italia, Inc.*,
536 U.S. 238 (2002).......................................................................................... 9

*Z.K. Marine Inc. v. M/V Archigetis*,
808 F. Supp. 1561 (S.D. Fla. 1992) .............................................................. 3

**STATUTES**

Florida Deceptive and Unfair Trade Practices Act,
§§ 501.201, Fla. Stat., *et seq.* ...................................................................... 4

**RULES**

Fed. R. Civ. P.
Rule 59(e)............................................................................................................ 11

Fed. R. Civ. P.
Rule 65(d) ........................................................................................................... 19

Fed. R. Civ. Proc.
Rule 23 .............................................................................................................. 1, 6

Rule 23(a)(4)............................................................................................................ 6

Rule 23(b)(2)........................................................................................................... 19

Rule 23(c).................................................................................................................. 3

Rule 23(f) ............................................................................................................ 2, 18

**TREATISES**

Herbert Newberg, 1 *Newberg on Class Actions*
§ 3.13 (1992)................................................................................................. 12, 16

- iv -

## I.   **INTRODUCTION**

Plaintiff respectfully requests that the Court reconsider its Memorandum Opinion and Order Denying Plaintiff's Motion for Class Certification ("4/11/07 Order").  Recognizing the effort the Court put into analyzing the original Class Motion, Plaintiff does not submit this request lightly.  However, the 11th Circuit has recognized the value of "allowing the district court the opportunity to fine-tune its class certification order." *See Shin v. Cobb County Bd. of Educ.*, 248 F.3d 1061, 1064 (11th Cir. 2001).  Plaintiff humbly submits that "fine-tuning" may be in order as Plaintiff believes she can adequately address the Court's initial criticisms.

The Court's Order is premised almost entirely upon two concerns which Plaintiff can resolve.  First, in large part, the Court's findings stem from the concern that the proposed Class definition was overbroad because not all Class members were obligated to pay Mercy's full chargemaster charges.  In this case, however, the Court's concern may appropriately be addressed through a revised Class definition that narrows the Class and focuses the analysis.[1] The proposed revised definition will solve the problem the Court identified in the original definition.

Second, Plaintiff perhaps did not appropriately emphasize the widely-accepted practice of using statistical and other forms of aggregate and scientific evidence to demonstrate a pattern and practice of classwide liability.  The evidence presented previously – along with supplemental evidence Plaintiff provides herein  – is sufficient to satisfy the elements of Fed. R. Civ. Proc. 23.

---

[1] Plaintiff's proposed revised Class definition is as follows:  All individuals (or their guardians or representatives) who, between July 19, 1999 and through the date of judgment, received any form of medical treatment at Mercy Hospital, were uninsured at the time of treatment, and did not receive free care or any discount off Mercy's chargemaster charges.  Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and any officers or directors of Defendant, the legal representatives, heirs, successors, and assigns of Defendant, and any judicial officer assigned to this matter and his or her immediate family.

Accordingly, Plaintiff respectfully requests that the Court reconsider its prior Order and certify the class here.

## II.   __STANDARD__

The Eleventh Circuit has observed that motions for reconsideration are the preferred method for correcting any deficiencies in a class certification ruling. *See Shin*, 248 F.3d at 1064. In *Shin*, the Eleventh Circuit recognized the importance of allowing district courts to revisit certification orders as needed to avoid interlocutory appeal under Rule 23(f), stating:

> "[W]e should err, if at all, on the side of allowing the district court an opportunity to fine-tune its class certification order rather than opening the door too widely to interlocutory appellate review." *Prado-Steiman*, 221 F.3d at 1274 (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 294 (1st Cir. 2000)).   Because the district court retains the ability, and perhaps even a duty, to alter or amend a certification decision, a motion for reconsideration of a class certification order is a better way to correct any errors in the certification order or to recognize the importance of new facts. *See Prado-Steiman*, 221 F.3d at 1274 ("[I]nterlocutory appellate review of a class certification decision may short-circuit the district court's ability -- or at least its willingness -- to exercise its power to reconsider its certification decision.").

*Id.*

"A motion for reconsideration must do two things. First, it must demonstrate some reason why the court should reconsider its prior decision. Second, it must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Cover v. Wal-Mart Stores, Inc.*, 148 F.R.D. 294 (M.D. Fla. 1993)).   "A motion for reconsideration should raise new issues, not merely readdress issues litigated previously." *Painewebber Income Props. Three Ltd. P'ship v. Mobil Oil Corp.*, 902 F. Supp. 1514, 1521 (M.D. Fla. 1995) (citing *Government Personnel Servs., Inc. v. Government Personnel Life Ins. Co.*, 759 F. Supp. 792, 793 (M.D. Fla. 1991)).

While such motions should be used sparingly, they are "appropriate where the Court has

patently misunderstood a party, or has made a decision outside of the adversarial issues

presented to the Court by the parties, or has made an error not of reasoning, but of

apprehension." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D.

Fla. 2002) (citing *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)).

As set forth below, Plaintiff satisfies the standard for reconsideration here.

## III.    RECONSIDERATION OF CERTAIN ISSUES REVEALS THAT PLAINTIFF SATISFIES ALL CLASS CERTIFICATION REQUIREMENTS.

### A.    Plaintiff's Revised Class Definition Is Appropriate.

Where a district court considers a proposed class definition to be too broad, the remedy is

to modify the definition, not to deny class certification. *See Kornberg v. Carnival Cruise Lines,*

*Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (reversing and vacating district court's order

decertifying the class where class definition was possibly too broad, noting that it "simply

require[d] that the class be limited."); *see also Pottinger v. City of Miami*, 720 F. Supp. 955, 960

(S.D. Fla. 1989) (noting that "[u]nder Rule 23(c), a court may amend or alter the definition of the

class at anytime prior to rendering a decision on the merits.").

Consistent with this authority, Plaintiff respectfully requests that the Court reconsider

Plaintiff's motion in light of the following proposed modified Class definition:

> All individuals (or their guardians or representatives) who,
> between July 19, 1999 and through the date of judgment, received
> any form of medical treatment at Mercy Hospital, were uninsured
> at the time of treatment, and did not receive free care or any
> discount off chargemaster charges. Excluded from the Class is
> Defendant, any entity in which Defendant has a controlling
> interest, and any officers or directors of Defendant, the legal
> representatives, heirs, successors, and assigns of Defendant, and
> any judicial officer assigned to this matter and his or her
> immediate family.

As discussed in more detail below, this modified Class definition would eliminate a number of

concerns expressed in the Court's April 11, 2007 Order, including the concern that the previous

614370.2

definition included Class members who received charity care.[2]

**B.**     **Plaintiff's Evidence is Sufficient to Establish the Elements for Class Certification Here.**

Plaintiff has alleged that Defendant's prices for uninsured patient treatment are unreasonable under Florida's Deceptive and Unfair Trade Practices Act, §§ 501.201, Fla. Stat., *et seq.*, and constitute breach of Mercy's uniform patient admissions contracts.  In its November 17, 2006 Order (and confirmed in the April 11, 2007 Order), the Court held that price reasonableness may be analyzed by considering "(1) an analysis of the relevant market for hospital services (including the rates charged by other similarly situated hospitals for similar services); (2) the usual and customary rate Mercy charges and receives for its hospital services; and (3) Mercy's internal cost structure." *Colomar v. Mercy Hosp., Inc.*, 461 F. Supp. 2d 1265, 1269 (S.D. Fla. 2006).  (*See also* 4/11/07 Order at 10-11.)  Applying that standard, Plaintiff provided statistical evidence demonstrating that Mercy's charges are extremely high compared to its costs, extremely high compared to what other payors pay for the same treatment, and extremely high compared to the charges of comparable hospitals.

Specifically, Plaintiff presented evidence (based on the data provided by Mercy), that between 2001 and 2004, all of Mercy's government and commercial payors – together constituting 90-95% of Mercy's patients – were expected to pay rates that reflected ***substantial discounts*** off Mercy's chargemaster prices, and, specifically, what appeared to be ***across-the-***

---

[2] Members of this revised Class would be ascertainable by objective standards because Mercy maintains records of charity care or patient discounts, making the definition an appropriate one. (*See* Ex. D to Pl.'s Reply Mem. iso Class Cert. (MH 00079 ("notes relating to the Charity Care application and approval or denial should be entered on the patient's account.").)  *See Fabricant v. Sears Roebuck*, 202 F.R.D. 306, 308 (S.D. Fla. 2001) ("The class definition is viable if it is ascertainable by an objective standard.") (finding class of Sears credit card holders that excluded accounts in default to be objectively defined and proper).

**board discounts** of between 60 and 70% off the chargemaster rates, given to all other payors.[3] Mercy did not dispute this evidence or conclusion.

Plaintiff likewise presented evidence that Mercy's charges to uninsureds have been exponentially higher than Mercy's costs. (Pl.'s Mem. iso Class Cert. Section III.C.2 (citing Declaration of Robb Cohen ¶ 24).)

Finally, Plaintiff provided evidence that Mercy's charges are higher than comparable hospitals. (Pl.'s Mem. iso Class Cert. Section III.C.1 (citing Declaration of Robb Cohen ¶ 23).) In fact, Plaintiff showed that Mercy sets its chargemaster rates on a common basis to reach a common "standing within the marketplace" *without regard to costs.* (*See* Pl.'s Mem. iso Class Cert., Ex. A (Guzman Dep. at 39:13-17), Ex. F.)  Notably, the Court here previously held that ". . . rate increases untethered to any appreciable increase in costs would raise questions about the reasonableness of the rate increases and the overall reasonableness of the charges." (11/17/06 Order at 10.)  This is precisely the case here.

However, the Court held that Plaintiff's statistical evidence of intra-payor price disparities, excessive charge-to-cost ratios, and higher-than-comparable-hospital pricing was not enough.  The Court rejected this evidence, however, on the premise that common issues could not predominate because Plaintiff would still need to show that each Class member was overcharged by Mercy's practice.  Plaintiff respectfully submits that this ruling overlooks substantial law to the contrary.

---

[3] Perhaps through lack of clarity, Plaintiff may have caused the Court to misapprehend the significance of other payors' 60-70% discounts off Mercy's chargemaster (4/11/07 Order at 18.) The confusion can best be cleared up through an illustration.  For example, if other payors receive a 74-87% discount (as they do at Mercy) off a $100 chargemaster charge (therefore paying $13-26 dollars), then $13-26 is the reasonable charge or value of the services in the marketplace set by other sophisticated payors, and the $100 chargemaster rate that uninsured patient Class members pay is inflated by **384-769%** over the reasonable rate, not by 60-70%.

**C.      Statistical Evidence Is A Well-Accepted Form of Common Proof.**

Courts have long accepted and approved the use of statistics, surveys, market data and

other types of aggregate evidence to support common proof for purposes of class certification.

*See, e.g., In re Terazosin Hydrochloride Antitrust Litig.*, 203 F.R.D. 551 (S.D. Fla. 2001)

(certifying class based on statistical data reflecting common proof of anticompetitive pricing);[4]

*Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1248 (E.D.N.Y. 2006) (certifying class

of RICO fraud claims against tobacco companies and finding that use of aggregate proof,

including to prove causation as to the class of smokers, was appropriate).[5]

For example, courts have frequently granted class certification in cases that challenge

pricing across markets.  These courts have found that anticompetitive "impact" can be proven

through common, aggregate data and expert opinions about the market at issue.  In fact, this

Court in *In re Terazosin Hydrochloride Antitrust Litig.*, 203 F.R.D. 551 (S.D. Fla. 2001), granted

class certification under such circumstances.  This Court found that plaintiffs had shown "that

---

[4] In *In re Terazosin Hydrochloride Antitrust Litig.*, 350 F.3d 1181 (11th Cir. 2003), the Eleventh Circuit remanded certification, finding the potential for conflict between plaintiffs and those class members who may have *benefited* from defendants' conduct.  No such potential for conflict exists here.  Upon remand, this Court denied the renewed motion for class certification solely on adequacy grounds, noting, "The Eleventh Circuit's opinion and the parties' briefs on remand focus exclusively on the adequacy of representation requirement of Rule 23(a)(4). Therefore, the Court's ruling addresses solely this prong of Rule 23, **and its conclusions on the remaining Rule 23 elements set forth in *In re Terazosin Hydrochloride Antitrust Litigation*, 203 F.R.D. 551 (S.D.Fla.2001) remain standing.**" *In re Terazosin Hydrochloride Antitrust Litig.*, 223 F.R.D. 666, 673 n.11 (2004).

[5] The Court's conclusion that statistics were legitimate was not a hypothetical one, as it observed, "Experience with several years of discovery in this and related tobacco cases, and two full trials, has strengthened the conclusion that statistical proof combined with other evidence is a necessary and pragmatic evidentiary approach that reflects full due process in this and many other massive tort cases." *Schwab*, 449 F. Supp. 2d. at 1240.

614370.2

they can use common evidence[6] to prove the impact of the defendants' conspiracy with a fair degree of certainty as to each member of the proposed class without resorting to lengthy individualized examinations," even though plaintiff could not necessarily show that "every class member was actually impacted." *Id.* at 558.  The same is true here.  Plaintiff has shown that she can use common evidence to prove the impact of Mercy's pricing practices with a fair degree of certainty as to each member of the proposed Class, *i.e.*, that each was subjected to a system in which Mercy inevitably charged them an unreasonable rate for medical care.

Other courts in this Circuit have similarly certified cases addressing market pricing on the basis of aggregate expert data and analysis.  For example, in *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677 (N.D. Ga. 1991), the court certified claims alleging a conspiracy to fix ticket prices at airline hubs nationwide, despite defendants' argument that the impact could not be established on a classwide basis because "millions of passengers flew on hub fares that (1) remained unchanged or actually decreased; (2) behaved the same as non-hub fares; or (3) were negotiated privately...."  The court found common issues to predominate based on plaintiffs' theory that fares were generally inflated through the conspiracy, and accepted as common proof the statistical evidence and empirical analysis offered by plaintiffs' expert.  The court further held that the common evidence offered through plaintiffs' expert was not improper just because, like here, "***the methodologies contain[ed] some form of averaging.***"  *Id.* at 691 (emphasis added).

These cases make clear that the offer of common statistical data is sufficient to demonstrate common proof for class purposes even where, at the class certification stage, the

---

[6] The common evidence consisted of "defendants' sales records, pricing guidelines, and studies, as well as market data and expert testimony and research."  *In re Terazosin Hydrochloride Antitrust Litig.*, 203 F.R.D. at 558.

plaintiffs have not produced evidence of liability as to each and every class member, defendant, product, or time period. For example, in *In re Polypropylene Carpet Antitrust Litig.*, 996 F. Supp. 18 (N.D. Ga. 1997), the District of Georgia certified price-fixing claims spanning the polypropylene carpet industry. The court found that plaintiffs had presented sufficient common evidence of the existence of an unfair pricing structure, while acknowledging that plaintiffs had not presented evidence "of a pricing structure that involved all Defendants and all polypropylene carpet products manufactured by Defendants." *Id.* at 22-23. The court recognized that it does not consider at the class certification stage **whether** Plaintiff can prove the merits of her case, but **how** Plaintiff will prove the merits at trial. *In re Polypropylene Carpet Antitrust Litig.*, 996 F. Supp. 18, 23 (N.D. Ga. 1997). The court noted that the evidence did not establish a price-fixing conspiracy "that lasted throughout the entire conspiracy period and involved all products manufactured by Defendants," but that the "evidence instead serves as examples of the type of evidence upon which Plaintiffs intend to rely at trial." *Id.* at 24-25. This was sufficient. *See generally id.*

Statistics and sampling are accepted methods of proving common liability in other types of class cases as well. *See, e.g., Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 334-40 (1977) (statistical analysis demonstrates prima facie case of class-wide employment discrimination even though some individuals may not have suffered discrimination or damage); *Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339 (11th Cir. 1983) (affirming trial verdict in class case finding pattern and practice of racial discrimination, based in part upon statistical evidence); *Davis v. Southern Bell Tel. & Tel. Co.*, No. 89-2839-CIV-NESBITT, 1994 WL 912242 (S.D. Fla. Feb. 1, 1994) (relying in part on survey evidence of widespread confusion among Florida phone subscribers to deny summary judgment as to class anticompetitive pricing claims); *Hilao v.*

- 8 -

*Estate of Marcos*, 103 F.3d 767, 782-87 (9th Cir. 1996) (affirming use of sampling to determine an element of liability—causation—as well as damages); *Cf. Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 178 F. Supp. 2d 198, 247 (E.D.N.Y. 2001) (finding statistical and sampling evidence in the aggregate to be a proper evidentiary alternative to evidence of injury suffered by individual smokers in case by insurance company seeking recovery of smoking-related healthcare costs).

Courts have approved the use of sampling and statistical analysis in numerous other non-class contexts as well. *See, e.g., United States v. 449 Cases Containing Tomato Paste*, 212 F.2d 567, 574-75 (2d Cir. 1954) (permitting confiscation of 449 cases of tomato paste as adulterated under the Federal Food, Drug and Cosmetic Act, where the *average* percentage of mold in tested samples exceeded administrative limits, but not all tested cans exceeded such limits); *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 247-48 (2002) (approving Internal Revenue Service use of aggregate estimation to determine unreported tips by restaurant employees); *Castaneda v. Partida*, 430 U.S. 482, 495-96 (1977) (statistical data sufficient to establish prima facie case of discrimination in jury selection); *G.M. Brod & Co., Inc. v. U.S. Home Corp.*, 759 F.2d 1526, 1538-40 (11th Cir. 1985) (using expert testimony to establish damages through profit projections based on industry norms); *Capaci v. Katz & Besthoff, Inc.*, 711 F.2d 647, 653-57 (5th Cir. 1983) (finding that trial court erred in not finding discrimination in manager trainee program in light of strong statistical evidence of discrimination using census data); *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 844-45 (11th Cir. 1983) (affirming district's court's admission of survey evidence to prove liability in trademark infringement case); *Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 854-58 (7th Cir. 1982) (affirming use of survey evidence to prove liability); *Exxon Corp. v. Texas*

- 9 -

*Motor Exchange, Inc.*, 628 F.2d 500 (5th Cir. 1980) (reversing denial of injunction, finding that district court erred in finding no likelihood of confusion, based in part on results of survey evidence presented below).

Following caselaw from this Circuit and others, Plaintiff presented statistical evidence of the type she would use at trial to establish that Mercy's charges are unreasonable to the Class generally and – to a fair degree of certainty – as to each Class member.  In rejecting Plaintiff's evidence, the Court overlooked cases endorsing such evidence to support class certification, and to prove facts at trial.

Accordingly, because the evidence presented here is consistent with a wide body of caselaw accepting such evidence, Plaintiff believes it warrants reconsideration.

**IV.      All Requirements of Rule 23(a) Are Met.**

    **A.      Numerosity is Satisfied.**

The Court found that Plaintiff did not make a sufficient showing to establish numerosity, relying primarily on the concern that not all of the 24,000+ uninsured patients seen at Mercy were obligated to pay the full chargemaster rates, with some receiving charity care (or other discounts).  (4/11/07 Order at 6-7.)  As discussed above, Plaintiff's revised class definition limits the Class to uninsureds who received *undiscounted* care, thus alleviating this concern.

While Plaintiff is not required to know the precise number of Class members in order to satisfy numerosity, *see, e.g. Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004), numerosity may be satisfied where there are as few as 25 in the Class.  *See Armstead v. Pingree*, 629 F. Supp. 273, 278-79 (M.D. Fla. 1986) (finding subclasses with 25 and 49 members

met the numerosity requirement).[7]  "The Court may 'make common sense assumptions in order

to find support for numerosity.'" *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla.

1997) (quoting *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir.1983)).

Here, it may be readily inferred that numerosity is met due to a number of factors.  For example,

Mercy's management admitted in sworn testimony that Mercy does seek to collect 100% of

charges from its uninsured patients. (*See* Ex. B to Pl.'s Mem. iso Class Cert (McDaniel Dep. at

39:10-17).)  Moreover, over the Class period, even assuming some discounts were applied to the

bills of some uninsured, the Class paid Mercy over $40 million for services and has debts

outstanding of over $115 million.  (Ex. A to Pl.'s Mem. iso Class Cert.)

Given these figures, it is certainly clear that at least hundreds, if not thousands, of

uninsured patients received undiscounted care from Mercy during the Class period.[8]  Moreover,

"where the question on numerosity is a close one, a balance should be struck in favor of a finding

of numerosity...." *Leszczynski.*, 176 F.R.D. at 669 (quoting *Evans*, 696 F.2d 925).

**B.**   **Commonality is Satisfied.**

In finding a lack of commonality, the Court expressed concern that some Class members

may not have been obligated to pay the full chargemaster rates.  However, under the proposed

revised Class definition, all Class members *were* obligated to pay the full chargemaster rates and

the reasonableness inquiry is now focused solely on the full "sticker price" rates charged all

---

[7] If the Court deems more precise figures to be necessary, Plaintiff requests the opportunity to
conduct discovery directed solely to the issue of class size under the revised class definition.
*See, e.g.*, *In the Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996) (finding it permissible to
allow introduction of new evidence in connection with motion under Fed. R. Civ. P. 59(e) where
it was not apparent previously that an issue would be relevant, and faulting District Court for not
allowing party to collect evidence on an issue once it was determined to be relevant).

[8] Interestingly, it appears from some of the data Mercy has provided, as well as from publicly-
available data, that the number of approximately 24,000 class members previously submitted
may have been a figure that *already excluded* Class members who received charity care.

Class members.  As this Court has previously recognized, "a single common question" – such as the reasonableness of full, undiscounted rates – is sufficient for commonality purposes.  *See In re Terazosin Hydrochloride Antitrust Litig.*, 203 F.R.D. 551, 554 (S.D. Fla. 2001).

Moreover, as described above, the Court's concern with Plaintiff's submission of aggregate statistical proof may be allayed by reference to caselaw from this Circuit and others recognizing the propriety of such data in showing commonality.  In fact, the type of evidence provided by Plaintiff is sufficient to establish at the class certification stage that Plaintiff will be able to offer common proof of Mercy's liability.

The Court also expressed concern that "all the facts going to the reasonableness of Mercy's charges will differ between the potential class plaintiffs based on the type of services rendered and the time period in which they were received." (4/11/07 Order at 9.)  As discussed, *supra*, at Section III.C, this analysis deviates from even this Court's own previous rulings and, if accepted, would make virtually any class action impossible because it would require that every class representative share 100% of every underlying fact in common with every other class member.  This is not the standard in this Circuit or elsewhere.  *See Davis v. Southern Bell Tel. & Tel. Co.*, Case No. 89-2839-CIV-Nesbitt, 1993 U.S. Dist. LEXIS 20033, *12 (S.D. Fla. Dec. 23, 1993) (granting class certification "irrespective of varying fact patterns which underlie the individual claims.") (citing Herbert Newberg, 1 *Newberg on Class Actions* § 3.13 (1992)). Moreover, the fact that Mercy's charges may, on average, have varied across years does not defeat commonality.  Based on appropriate evidence, a patient subjected to unfair pricing in one year (such as Plaintiff here) can challenge unfair pricing in other years because that patient shares a common legal theory and many common facts with other patients challenging unfair

- 12 -

pricing. In fact, Plaintiff here will provide proof of Mercy's unreasonable charges (and, thus, liability) for each year of the class period. That data is readily available.

For example, during the period 2002 through 2004, Mercy's charges have been consistently and significantly higher than comparable hospitals and have far exceeded both the national average and the median hospital charges for services when measured against Non-Outlier Medicare Reimbursement Payments. (Supplemental Declaration of Robb Cohen ("Supp. Cohen Decl.") ¶ 6.) According to MedPAR data, in 2004, Mercy's charges were on average 458% higher than Medicare's reimbursements for those services. (*Id.* ¶ 7.) This compared to a national hospital charge average of 305% higher than Medicare's reimbursements, and a national median of 215%. (*Id.*) Mercy's charges in 2003 were 436% higher than Medicare reimbursements, compared to a national hospital average of 291% higher, and a national median of 209%. (*Id.* ¶ 8.) In 2002, Mercy's charges were on average 323% higher than Medicare's reimbursements, compared to a national hospital average of 258%, and a national median of 195%. (*Id.* ¶ 9.)

Mercy's charges have also been excessive when compared to its own internal costs. For example, in 2000, Mercy's charges were, on average, 234% of its costs. (Supp. Cohen Decl. ¶ 12.) Mercy's charges were, on average, 268% of its costs in 2001, 426% of costs in 2002, 462% of costs in 2003, 436% of costs in 2004, and 449% of costs in 2005. (*Id.*) As the data reflects, in 2002, Mercy suddenly and substantially raised its charges – by nearly 60% – going from a charge-to-cost ratio of 268% above costs in 2001 to 426% above costs in 2002. (*Id.* ¶ 13.) As a result, beginning in 2002, the charges in all of Mercy's cost centers exceeded a 200% charge-to-cost ratio, reflecting greater than a 100% profit margin for all cost centers based on billed charges. (*Id.*) Mercy's discounts to all other payors except uninsureds, however, rose by a

- 13 -

comparable amount when Mercy dramatically increased its prices, leaving uninsureds alone responsible for these staggering increases.

In addition, in response to the Court's concerns regarding Mercy's charges across specific departments, Plaintiff has filed herewith a Supplemental Declaration of Robb Cohen that provides additional evidence regarding Mercy's charge-to-cost ratios broken down by *type of service*, including respiratory care where Plaintiff Colomar was treated. (Supp. Cohen Decl. ¶¶ 13-18, Ex. B.) This evidence is even more compelling. For the years 2002-2005, Mercy's charges have been in excess of two times its costs for every cost center, with many cost centers greatly exceeding that ratio. (*Id.* ¶ 14, Ex. B.) For example, during the 2002-2005 time period, 15 of Mercy's 21 cost centers had a charge-to-cost ratio consistently greater than 300%, 11 had a charge-to-cost ratio consistently greater than 400%, 9 had a charge-to-cost ratio consistently greater than 500%, and 5 had a charge-to-cost ratio consistently greater than 700%. (*Id.*) This means that across virtually all departments Mercy consistently charged between three and seven times its costs, reflecting gross and patently excessive pricing.

As for respiratory treatment, the type of treatment Plaintiff Barbara Colomar received, the data for each year 2000 through 2005 demonstrates that Mercy's charge-to-cost ratio for respiratory therapy was 226% above costs (2000), 256% above costs (2001), 425% above costs (2002), 578% above costs (2003), 906% above costs (2004) and 945% above costs (2005), respectively. (Supp. Cohen Decl. ¶ 16, Ex. B.) This shows that in the very service area where Plaintiff was treated and in the very year she was treated, Mercy charged uninsureds 578% above costs – or nearly six times more than the amount that it cost Mercy to provide the services. (*Id.*) For every year since 1999, Mercy always charged uninsureds more than double the costs of

respiratory services, and more recently, in 2004 and 2005, *more than nine times its costs*.  (*Id.*) This additional common evidence more than satisfies commonality.[9]

### C.     Typicality is Satisfied.

Plaintiff submits that the Court employed an unusually strict interpretation of typicality in its April 11, 2007 Order, contrary to the standard applied in other cases. *See, e.g., In re Terazosin Hydrochloride Antitrust Litig.*, 203 F.R.D. at 554 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)) ("Typicality exists 'if the claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same theory.'"); *see also Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 698 (S.D. Fla. 2004) (quoting *Kornberg*).

Plaintiff is alleging on behalf of herself and the Class that *Mercy's chargemaster charges are unreasonable* based on costs, what others pay, and what other hospitals charge. (*See generally* SAC ¶¶ 30-32, 43,45.)  Typicality exists because Plaintiff is like all other Class members in that she was uninsured and was charged Mercy's full chargemaster rates.  Plaintiff will prove, using common evidence, that Mercy engages in uniform pricing practices that are unreasonable and that negatively impact all Class members.[10]

The Court raised the same concern with potential differences for types and years of service that it raised in connection with commonality.  For the same reasons discussed *supra* at Section IV.B, these concerns can be addressed through common evidence showing an

---

[9] The cost center data reflects numerous instances of even more excessive prices.  For example, just in 2003 alone (the year Plaintiff was treated), Mercy charged patients seen in the emergency room almost four times its costs (397%), patients provided drugs or electrocardiology services over seven times its costs (723% and 788%), patients provided lab work over nine times costs (957%), patients provided recovery room services over eighteen times costs (1820%), and patients given anesthesia over twenty-six times costs (2667%).  (Cohen Supp. Decl. ¶ 17.)

[10] Plaintiff challenges Mercy's charges across all departments, including respiratory charges.

614370.2

overarching practice of price unreasonableness. Moreover, because Plaintiff challenges the same unlawful conduct experienced across the Class, typicality is satisfied. *See also Davis v. Southern Bell Tel. & Tel. Co.*, Case No. 89-2839-CIV-Nesbitt, 1993 U.S. Dist. LEXIS 20033, *12 (S.D. Fla. Dec. 23, 1993) ("when the party seeking certification alleges that the same unlawful conduct was directed at or affected both the class representatives and the class itself, the typicality requirement is usually met irrespective of varying fact patterns which underlie the individual claims.") (citing Herbert Newberg, 1 *Newberg on Class Actions* § 3.13 (1992)).

**D.**     **Plaintiff is an Adequate Class Representative.**

Although the Court found that Plaintiff and Plaintiff's counsel satisfied the adequacy requirement, Plaintiff respectfully requests that the Court allow her to supplement the record with the accompanying declarations of counsel going to their qualifications and expertise, including in numerous hospital pricing cases involving uninsured patients. *See* Declaration of Caryn Becker; Declaration of Theodore Leopold; Declaration of Sidney Backstrom.

**V.**     **Certification Of The Class Is Proper Under Rule 23(b)(3).**

**A.**     **Common Questions Predominate.**

As with commonality and typicality, the Court's primary concern as to predominance was its conclusion that reasonableness must be examined on a bill-by-bill basis. As discussed *supra* in Sections III, IV.B, IV.C, however, Plaintiff has offered common evidence to examine the reasonableness factors, and the evidence submitted is of a type regularly accepted by courts to demonstrate class liability. To the extent individuals may have suffered differing degrees of damage as a result of this common scheme, it is well established that differences in individual damages across the Class do not defeat certification. *See, e.g., Klay v. Humana, Inc.*, 382 F.3d 1241, 1260 (11th Cir. 2004) (discussing that presence of individualized damages does not

prevent certification, and noting that individual determinations could be made by simple reference to defendant's records).

Nothing in the caselaw addressing unreasonable or unconscionable prices, including this Court's November 17, 2006 Order, indicates that the pricing analysis must be conducted on an individualized basis or that it cannot be examined companywide. To the contrary, courts have recognized the propriety of such systemic pricing analyses. See, e.g., *In re Terazosin Hydrochloride Antitrust Litig.*, 203 F.R.D. 551 (S.D. Fla. 2001); *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677 (N.D. Ga. 1991). Regardless, the evidence here of common problems is overwhelming, as Plaintiff has shown that Mercy's charges were grossly above its cost of providing treatment in every year examined between 2000-2005 (including when broken down by category of service), were far in excess of what other payors paid **(384%-769% higher than other payors)**, and were excessive compared to other comparable hospitals. (*See* Pl.'s Mem. iso Class Cert. Section III.C; Supp. Cohen Decl. ¶¶ 14-18, Ex. B.)

Although the Court found *Quinn v. BJC Health Sys.*, No. 22052-821A (Mo. Cir. Ct, March 2, 2007), to be unpersuasive, noting that the court there accepted that reasonableness could be proven, unlike under Florida law, *solely* by reference to the amounts the hospital charged to its patients who had government benefits or insurance (4/11/07 Order at 18-19). However, this Court has made clear that differential pricing is still relevant to the unreasonableness inquiry even if alone it would be insufficient. *Colomar*, 461 F. Supp. 2d at 1271-72. The *Quinn* court found that this differential pricing inquiry—which is relevant here as one piece of unreasonableness evidence—could be performed on a common basis. The same is true here. Additionally, the *Quinn* court's analysis of how common evidence could satisfy

- 17 -

predominance is equally applicable to the other factors going to reasonableness under Florida law, and should be adopted by the Court.[11]

In *Quinn*, like here, the defendants argued that individual issues predominated, asserting, *inter alia*, that reasonableness "requires a determination that can only be made on a patient-by-patient basis, based on the particular medical treatment the patient needed, the specific charges the patient incurred for those services and, ultimately, how each of those charges compared to the charges of other hospitals for the same services." *Id.* at 18-19. The *Quinn* court rejected this argument, finding as follows:

> Plaintiffs' cause of action arises more from a suggestion of a continuing pattern of unreasonable pricing across the range of medical goods and services, as opposed to specific goods or services. In that regard, Plaintiffs need only prove general bad faith and a pattern, policy or practice of unreasonableness in Defendants' pricing practices. To the extent Plaintiffs prove this, such a finding would appropriately apply to the entire class.

*Quinn* at 23. Plaintiffs' evidentiary proffer in *Quinn*, including data averages—was sufficient to demonstrate common issues. *Id.* at 23, 26 ("The Court believes that Plaintiffs will be able to submit evidence to a jury of an 'average' managed care discount from which a jury could determine a reasonable charge for services."); *see also id.* at 24 (noting that plaintiffs could prove allegations "by evidence of a sufficient sampling of charges to allow a jury to determine if Defendants have engaged in a practice of unreasonable pricing."). *Cf. Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 832 A.2d 501, 510 (Pa. Super. Ct. 2003) (in dispute between a hospital and managed care organization as to the reasonable reimbursement rates for

---

[11] Notably, the Court here relied upon *Maldonado v. Ochsner*, 237 F.R.D. 145 (E.D. La. 2006) for the contrary position. However, as Plaintiff mentioned in her Reply Memorandum, that decision is up on Rule 23(f) review in the Fifth Circuit, and set for oral argument at the end of the month. (Ex. E to Pl.'s Reply Mem. iso Class Cert.)  Currently, then, the weight to be accorded the *Maldonado* opinion is questionable at best.

services provided by the hospital, court concluded that the hospital should be awarded the *average* reimbursement contained in contracts with governmental agencies and insurance companies). *Quinn* thus illustrates how common evidence may be tried in a case like this.

**VI.     Certification of Plaintiff's Claims is Appropriate Under Rule 23(b)(2).**

For the reasons discussed herein, certification under Rule 23(b)(2) is similarly appropriate.  It is undisputed that Class members are the only patients ever held accountable for Mercy's full chargemaster rates.  Plaintiff intends to prove that Mercy has engaged in a pattern and practice of charging the Class unreasonable prices, such that Mercy acts on grounds generally applicable to the Class as a whole.  Accordingly, declaratory relief is appropriate.  As this Court has already determined, "... the dispute as to the lawful amount owed needs to be resolved, either as a damages suit to recover any excess paid by Plaintiff, ***or as a declaratory judgment action to determine the lawful amount owed.***"  (11/17/06 Order at 11 (emphasis added).)

The Court concluded in the April 11, 2007 Order that "an order enjoining Mercy 'from continuing to overcharge plaintiff and the Class,'" is not "specific, clear or enforceable enough to comport with Fed. R. Civ. P. 65(d).  However, Plaintiff anticipates that any declaratory judgment will, in fact, be more specific.  As Plaintiff suggested earlier in the case, the declaratory judgment might "contain a formula or other common method for determining the lawful amount owed, based on the [pricing reasonableness] factors set forth in the Court's November 17 Order." (Pl.'s Reply Mem. iso Class Cert. at Section III.C.)  *Cf. Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 832 A.2d 501, 510 (Pa. Super. Ct. 2003) (hospital determining reasonable value of hospital services by reference to amounts paid by the relevant community of patients covered by insurance policies and federal programs).  Applying a formula or aggregate standard is sufficient for declaratory relief.

- 19 -

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court reconsider the

Order denying class certification and grant her Motion for Class Certification, utilizing the

revised Class definition set forth herein.  In the alternative, if the Court has additional questions

or concerns, Plaintiff respectfully requests permission to conduct limited discovery and submit

additional evidence to address such issues.

Dated: April 24, 2007                              Respectfully submitted,

                                                   /s/Theodore J. Leopold, Esq. (FL No. 705608)
                                                   Theodore J. Leopold, Esq.
                                                   RICCI ~ LEOPOLD, P.A.
                                                   2925 PGA Boulevard, Suite 200
                                                   Palm Beach Gardens, FL 33410
                                                   Telephone: 561-684-6500
                                                   Facsimile:  561-697-2383
                                                   tleopold@riccilaw.com

Sidney A. Backstrom                                Kelly M. Dermody
Scruggs Law Firm, P.A.                             Caryn Becker
120A Courthouse Square                             Jenna M. Whitman
P.O. Box 1136                                      Lieff, Cabraser, Heimann & Bernstein, LLP
Oxford, MS 38655                                   275 Battery Street 30th Floor
Telephone: 662 281 1212                            San Francisco, California 94111-3339
Facsimile: 662 281 1312                            Telephone: 415-956-1000
                                                   Facsimile:  415-956-1008

                                                   Bryan A. Vroon, Esq.
                                                   GA Bar No.:  729086
                                                   John W. Crongeyer, Esq.
                                                   GA Bar No.:  197267
                                                   Vroon & Crongeyer, LLP
                                                   1230 Peachtree Street, Suite 2450
                                                   Atlanta, Georgia  30309
                                                   Telephone:  404-607-6710
                                                   Facsimile:  404-607-6711

614370.2

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically on April 24, 2007 with the Clerk of the Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

Christina Maria Ceballos-Levy  ccl@kennynachwalter.com
Lewis Warren Fishman  lwfpa@aol.com
Laura Ganoza   ganozal@bipc.com,  Christopher.hudson@bipc.com
Laura Ganoza  laura.ganoza@bipc.com,  Christopher.hudson@bipc.com
Robert Donald Wike Landon, III    mbardelas@kennynachwalter.com,
     mbardelas@kennynachwalter.com
Theodore Jon Leopold  tleoopld@riccilaw.com,  vmodaffari@riccilaw.com,
     ldamjanov@riccilaw.com
Alan Richard Poppe   poppear@bipc.com
Thomas H. Seymour   Tseymour@kennynachwalter.com,  moria@kennynachwalter.com

Notice will be delivered by U.S. Mail to:

Steven E. Bizar, Esq.
Buchanan Ingersol
1835 Market St 14th FL
Philadelphia PA 19101-2985

Kelly Dermody, Esq.
Lieff Cabraser Heimann & Bernstein LLP
Embarcadero Center West
275 Battery Street
30th FL
San Francisco, CA  94111-3339

RICCI~LEOPOLD, P.A.
2925 PGA Blvd., Suite 200
Palm Beach Gardens, FL  33410
Phone: 561-684-6500; Fax: 561-697-2383
Email: tleopold@riccilaw.com

By:/s/Theodore J. Leopold, Esq.  (FL Bar 705608)
THEODORE J. LEOPOLD, Esq.

614370.2