UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 05-22409-CIV-SEITZ/MCALILEY

**CLOSED CIVIL CASE**

BARBARA COLOMAR, on behalf
of herself and all others similarly
situated,

    Plaintiff,
v.

MERCY HOSPITAL, INC., and
CATHOLIC HEALTH EAST, INC.,

    Defendants.
_____/

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendant Mercy Hospital, Inc's ("Mercy's") Motion for Summary Judgment [DE-189] and Plaintiff Barbara Colomar's ("Plaintiff's") Motion to Remand [DE-211]. Mercy argues that it is entitled to judgment in its favor on Plaintiff's action for breach of contract and violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA") because Plaintiff has failed to adduce enough evidence to substantiate her claim that the charges Mercy billed her for its hospital services were unreasonably high. The Court agrees that on this record summary judgment is warranted.

In addition to opposing Mercy's summary judgment motion on the merits, Plaintiff argues that the Court must remand the case to state court for want of subject matter jurisdiction because, now that the diverse co-defendant Catholic Health East, Inc. ("CHE") has been dismissed, this case falls within the "home-state controversy exception" to the Court's jurisdiction under the Class Action Fairness Act. However, since the Court's jurisdiction is evaluated at the time of removal, and jurisdiction was unquestionably proper at the time Mercy removed the case, the subsequent dismissal of CHE does not divest the Court of jurisdiction.

1

I.      **Background**

At its core, this case attacks the reasonableness of Mercy's hospital charges. Plaintiff was a patient at Mercy between March 5-6, 2003, where she received respiratory care for shortness of breath. *See* DE-190 (Defendant's Statement of Undisputed Fact) ("Def. SUF") ¶ 1. Mercy provided Plaintiff with 51 separately itemized services during her stay. *See* Def. SUF ¶ 2. Plaintiff does not allege any deficiency in the care she received from Mercy. *See* Def. SUF ¶ 4. Rather, her complaint targets the bill Mercy sent her for the medical services rendered.

Prior to receiving any treatment or services from Mercy, Plaintiff signed an "Authorization and Guarantees" form (the "contract") in which she agreed to pay all bills not otherwise covered by insurance or other means. *See* DE-47 (Second Amend. Compl., Ex. A)   However, the services she would need and the prices she would pay were unspecified in the contract. *Id.* After Plaintiff was discharged from the hospital, she received a bill from Mercy totaling $12,863.00. Def. SUF ¶ 2. Because her contract with Mercy does not expressly set forth the price term for the services in question, Florida law requires the amount to be reasonable. Plaintiff claims that it is not.

After extensive briefing and argument from counsel, the Court issued an order setting forth the standards for proving a claim of unreasonable pricing. *See Colomar v. Mercy Hosp. Inc.*, 461 F. Supp.2d 1265, 1274 (S.D. Fla. 2006). By its present motion, Mercy seeks summary judgment on the grounds that Plaintiff has insufficient evidence to satisfy her burden of proof under the applicable standard.

II.     **Plaintiff's Motion to Remand**

Because Plaintiff's Motion to Remand implicates the Court's jurisdiction it will be resolved first. Under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in pertinent part in 28 U.S.C. § 1332), federal courts have original jurisdiction over class action cases in which (1) the number of plaintiffs in the proposed class exceeds one hundred; (2) any member of the plaintiff class is diverse from any defendant; and (3) the aggregate of the claims of individual class

2

members exceeds $5,000,000, exclusive of interests and costs. *See* 28 U.S.C. § 1332(d); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1194 (11th Cir. 2007). At the time Mercy removed this case from state court CAFA's jurisdictional prerequisites were satisfied on the face of the Complaint so that removal was proper.[1] Plaintiff argues, however, that the Court's subsequent dismissal of diverse co-Defendant CHE, and subsequent denial of class certification status, divests the Court of any continuing CAFA jurisdiction under the so-called "home-state controversy exception" described in 28 U.S.C. § 1332(d)(4)(B). That exception requires a court to "decline to exercise jurisdiction" where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." Admittedly, now that CHE is out of the picture and class certification has been denied, the only plaintiff and the only defendant in this action are both Florida citizens. Mercy does not dispute that the requirements of the home-state controversy exception are met at this juncture. Rather, Mercy argues that the Court's jurisdiction is to be measured at the time of removal, and that subsequent events do not oust the Court of jurisdiction. Mercy is correct.

Applying CAFA, the Eleventh Circuit has reaffirmed the longstanding rule that courts are to assess jurisdictional facts as they stand at the time of removal. *See Miedema v. Maytag Corp.*, 450 F.3d 1322, 1331 (11th Cir. 2006); *accord Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56-57 (2d Cir. 2006) (applying CAFA). A court can, of course, consider later-developed evidence bearing on the jurisdictional issue; but nevertheless jurisdiction itself is measured at the time of removal, not at some later date. *See Meidema*, 450 F.3d at 1331 (citing *Burns v. Windsor, Ins. Co.*, 31 F.3d 1092, 1097 n.13 (11th Cir. 1994)

---

[1] At the time of removal the proposed class consisted of all uninsured patients in the CHE network, which consists of hospitals in eleven eastern seaboard states. *See* DE-1, ¶¶ 31, 41. Plaintiff sought damages for any amount charged in excess of the Medicare rate, which Plaintiff alleged to be a fraction of the rate charged to Plaintiff and could exceed a 1000% markup. *Id.*, ¶ 11, 34, 41. Plaintiff alleged that there were "thousands" of such persons in the class. *Id.* ¶ 44. Given that the Plaintiff's damages were reasonably construed to amount to thousands of dollars, and she also sought injunctive relief, it was more than reasonable to conclude that the prerequisites for CAFA jurisdiction were met on the face of the pleading. (Only 2,000 class plaintiffs with $2500 claims would have reached the monetary threshold, without even considering the value of the injunctive relief.)

3

and *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001)). While CAFA expressly alters some traditional jurisdictional notions – such as the complete diversity requirement – there is nothing in CAFA suggesting that the time for assessing removal jurisdiction has been modified. *See Meidema*, 450 F.3d at 1329 ("[w]e presume that Congress legislates against the backdrop of established principles of state and federal common law, and that when it wishes to deviate from deeply rooted principles it will say so.").

It is not surprising, therefore, that the district courts considering the issue (there does not appear to be any direct circuit authority on point) have concluded that case developments subsequent to removal do not alter the courts' CAFA jurisdiction, if jurisdiction was proper at the time of removal. *See Davis v. Homecomings Financial*, No. C05-1466RSL, 2007 WL 905939 (D. Wash., Mar. 22, 2007) (slip copy); *Moniz v. Bayer A.G.*, 447 F. Supp.2d 31, 36 (D. Mass. 2006); *Robinson v. Holiday Universal*, No. 05-5726, 2006 WL 470592 (E.D. Pa., Feb. 23, 2006); *Dinkel v. G.M.C.*, 400 F. Supp.2d 289, 294 (D. Me. 2005). The decision in *Davis* is particularly apt here, given the timing of the instant motion to remand. In *Davis*, as here, the plaintiff moved for remand two years into the case and after defendant filed for summary judgment. The *Davis* court rejected plaintiff's attempt and, quoting from the Senate Report accompanying CAFA, explained:

> Current law (that S.5 does not alter), is also clear that, once a complaint is properly removed to federal court, the federal court's jurisdiction cannot be ousted by later events.... If a federal court's jurisdiction could be ousted by events occurring after a case was removed, plaintiffs who believed the tide was turning against them could simply always amend their complaint months (or even years) into the litigation to require remand to state court.... [I]f subsequent events could unravel a federal court's jurisdiction, a defendant could prevail on the merits, only to have the federal court conclude that it lacks jurisdiction to enter judgment.

*Davis*, 2007 WL 905939, at * 2 (quoting S. Rep. 109-14, 109th Cong., 1st Sess. 2005, reprinted in 2005 U.S.C.CA.N. 3, *70-71, *66-67). Those concerns apply equally well in this case, which was properly removed from state court approximately two years ago. To litigate the case up to the eve of trial, and then

to seek remand after adverse rulings have issued and summary judgment is briefed, equates to a forum shopping which the traditional rules of removal and remand are designed to preclude.

The two cases Plaintiff cites in her reply brief are not persuasive. Indeed, in *Giannini v. Schering-Plough Corp.*, No. C-06-6823, 2007 WL 1839789, *3 (N.D. Cal., June 26, 2007), the court expressly found that its "jurisdiction was not automatically divested when the class action claims were dismissed...." Nonetheless, despite finding that it was not divested of jurisdiction, the court went on to analyze the plaintiff's remand under its discretionary supplemental jurisdiction. While it is not readily apparent how a court can retain original jurisdiction of a case under CAFA, yet remand under a supplemental jurisdiction theory, even if this Court were to follow the *Giannini* court and analyze remand in terms of supplemental jurisdiction, this Court would still deny the motion. Considerations of judicial economy, convenience, fairness and comity all favor denial of remand given the timing of the motion. Plaintiff's citation to *Shappell v. PPL Corp.*, Civ. No. 06-2078, 2007 WL 893910 (D.N.J. March 21, 2007), is even less convincing, as there the court granted plaintiff's voluntary dismissal of his claims and therefore *denied* remand. Accordingly, the Court cannot accept Plaintiff's belated attempt to remand this case to state court.[2]

### III.   Defendant's Motion for Summary Judgment

#### A.   *Summary Judgment Standard*

Summary judgment under Fed. R. Civ. P. 56(c) is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

---

[2]   Although Mercy does not expressly raise the argument, it appears that Plaintiff's motion to remand is arguably untimely as well, to the extent that she invokes the home-state controversy exception. That exception requires a court to *decline* jurisdiction otherwise conferred by 28 U.S.C. § 1332(d)(2). *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022 (9th Cir. 2007) ("Implicit in ... [the home-state controversy exception] is that the court has jurisdiction, but the court ... must decline to exercise such jurisdiction."). Thus, while the exception limits a court's *exercise* of jurisdiction, it does not confer jurisdiction. To the extent her remand is based on something other than lack of subject matter jurisdiction, Plaintiff was required to move the Court for remand within 30 days of removal. *See* 28 U.S.C. § 1447(c).

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party moving for summary judgment bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the initial burden is met, the non-moving party must go beyond the pleadings and "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)); *see also Celotex*, 477 U.S. at 324. To survive summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. Indeed, a mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that a jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

In assessing whether the parties have met their respective burdens, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the facts in the non-movant's favor. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). "If the non-moving party fails to 'make a sufficient showing on an essential element of her case with respect to which she bears the burden of proof,' then the court must enter summary judgment for the moving party." *Id.* at 1181 (quoting *Celotex*, 477 U.S. at 323).

### B.   *Applicable Law Governing Unreasonable Pricing Claims*

As in other jurisdictions, Florida law is settled that when the price term in a contract for hospital services is left "open" or undefined, then the courts will infer a reasonable price. *See Payne v. Humana Hosp.*, 661 So.2d 1239, 1241 (Fla. 1st DCA 1995) (where a "contract fails to fix a price ... a reasonable price is inferred."). The Court previously determined, after the parties' briefing and argument, that Plaintiff's claim of unreasonable pricing for hospital services could be proved based on the following non-

exhaustive types of evidence: (1) the relevant market price for hospital services (including the rates charged by other similarly situated hospitals for similar services); (2) the usual and customary rate Mercy charges and receives for the services in question; and (3) Mercy's internal cost structure. *See Colomar v. Mercy Hosp., Inc.*, 461 F. Supp.2d 1265, 1274 (S.D. Fla. 2006). The Court also previously explained in unequivocal terms that evidence of differential pricing – i.e, evidence that Mercy accepted a lower amount for the same services from a different patient – is not enough as a matter of law to establish that Mercy's charges are unreasonable. *See id.* at 1271; *see also* DE-41 p.7; DE-126 p. 8-9 (all citing and discussing *Hillsborough Co. Hosp. Auth. v. Fernandez*, 664 So.2d 1071, 1072 (Fla. 2d DCA 1995)). Consideration of the evidence in this case shows that Plaintiff has failed to proffer enough evidence to send this case to a jury. No reasonable juror could conclude based on this record that Mercy's charges are unreasonable. Indeed, for all intents and purposes, Plaintiff has submitted little more than a differential pricing claim, which the Florida courts have soundly rejected.

1.   **Differential Pricing**

The rate a hospital charges other patients for the same services (differential pricing) is relevant to the question of reasonableness. While the Florida courts have held that differential pricing is not enough, "standing alone," to prove unreasonableness, they have also indicated that the price other patients are charged may nonetheless be one piece of relevant information in the inquiry. *See Hillsborough Co. Hosp. Auth. v. Fernandez*, 664 So.2d 1071 (Fla. 2d DCA 1995). *Fernandez* teaches that combined with other evidence, differential pricing might establish that certain hospital charges are unreasonable.

Here, Plaintiff has shown, and Mercy does not dispute, that Medicare would have reimbursed Mercy $8,296 for Mercy's treatment of Plaintiff. Def. SUF § 26. Mercy charged Plaintiff $12,863. Def. SUF ¶ 2. This is evidence of differential pricing. It shows that Mercy charged Plaintiff 155% more than it was willing to accept from Medicare. However, given that Plaintiff's own expert expressed the opinion that charging 150% of the Medicare rate would be a *per se* reasonable rate (although at the high end of the

reasonable spectrum), *see, e.g.,* DE-188, Ex. I pp. 121-132, Mercy's charges in this case border on being *per se* reasonable by Plaintiff's own standard. While the difference between Mercy's charges and Plaintiff's outer limit on reasonableness is not trivial (it amounts to approximately $417),[3] it is close enough to a *per se* reasonable rate to cast serious doubt on Plaintiff's case, especially since the 150% figure was ultimately a matter of Plaintiff's expert's "personal opinion." *Id.* at p. 123.

Moreover, Plaintiff's only evidence of differential pricing is the amount Medicare would have paid. Plaintiff's response points to no evidence of what commercial payers like HMOs, private insurance or other self-insured employers would have paid Mercy for the services Plaintiff received. Indeed, the undisputed evidence from Mercy's expert reveals that Medicare paid at or near cost for medical services, while other commercial payers paid a higher amount. *See* DE-205, Ex. C (Tompkins Report) § III-02. Thus, while the difference between the Medicare rate and what Mercy charged Plaintiff is approximately 155%, the difference between what other commercial payers would have paid and Mercy's charge to Plaintiff is a much smaller (more reasonable) percentage. Significantly, without evidence of what other commercial payers paid, it is difficult to consider the reasonableness of Plaintiff's charges. In any event, without more, Plaintiff's evidence that Mercy charged 155% more than Medicare would have paid is not enough, as a matter of law, to defeat Mercy's motion for summary judgment. *See Fernandez, supra* (reversing trial court's reduction of hospital charges where plaintiff's only evidence was differential pricing).

2. **Market Analysis**

Evidence of what other hospitals in the same market would have charged and accepted for the same services is another factor in the reasonableness inquiry. *See Colomar*, 461 F. Supp.2d at 1269-71. Accordingly, the Court expected that Plaintiff would submit evidence to substantiate her allegations that

---

[3] According to Plaintiff's expert, a *per se* reasonable rate for Mercy's hospital services would be $12,444 (1.5 x $8,296). The difference between the amount charged and the *per se* reasonable rate would be $417 ($12,863-$12,444).

Mercy charged more than other hospitals in the same market. She could have perhaps shown information that other hospitals – for example Jackson Memorial or Cedars Medical Center – would have charged substantially less for the same 51 itemized services provided to her. Despite the Court's instruction that such evidence would be important to the analysis, Plaintiff has not offered any evidence of what other hospitals in the same market would charge, presumably because she either did not seek it, or perhaps because she did not like the results of the search. In fact, Plaintiff now argues that such evidence is irrelevant to this case altogether because, she claims, South Florida hospital rates are all notoriously overpriced. Presumably, she means that if the Court compared Mercy's charges to other hospitals in the same market they would be on par. Plaintiff argues that the Court should consider nationwide statistics and compare Mercy's charges to average charges from across the nation instead.[4]

Plaintiff's argument is contrary to Florida law. When Florida courts have analyzed whether charges are unreasonable or unconscionable, they have looked to evidence of similar transactions in the same local market, not the broader national marketplace. *See, e.g., Appel v. Scott*, 479 So.2d 800, 801 (Fla. 2d DCA 1985) (reversing dismissal of claims where rent increases were, among other things, "grossly excessive when compared with rents charged by similarly situated mobile home parks *in the county.*") (emphasis added). This more focused analysis is well-founded. Comparing prices in Miami to prices in other parts of the country, and in particular to a national average price, ignores inherently local factors that drive local charges. Thus, comparing Mercy's charges to the average of all hospitals nationwide simply is not an accurate or fair measure against which to judge Mercy. By contrast, in comparing Mercy to other local hospitals one achieves a more realistic comparison of Mercy's charges to other hospitals when all else is relatively equal. If a local hospital can charge substantially less for the same services, then one has evidence to show that Mercy's charges are overpriced.

---

[4] For example, Plaintiff's expert claims that "in 2003, Mercy's charges were on average 436% of Medicare's Non-Outlier Reimbrsement Payments. This compared to a national average of 258%, and a national median of 209%." DE-181-1 (Supplemental Declaration of Robb Cohen) ¶ 8.

Furthermore, even accepting the use of nationwide statistics, Plaintiff's data involve *average charge data* for the nationwide market. There is no evidence of nationwide average charges for the 51 items in Plaintiff's bill, but only statistical average data for all charges, or for broad classes of charges. Plaintiff's critical failure to provide evidence of charges for the *same* services in the *same* market is fatal to her case.

### 3. Internal Cost Structure

Another relevant factor in analyzing whether hospital charges are reasonable is the particular hospital's internal cost structure. *See Colomar*, 461 F. Supp.2d at 1272-73. In her Second Amended Complaint, Plaintiff alleged that the cost of her services totaled approximately $2,100. If Plaintiff could substantiate that allegation with evidence, it would mean that Mercy charged Plaintiff almost six times what it cost Mercy to treat her. The Court expected that Plaintiff would provide an itemized list of the 51 services and medications she received along with a breakdown of Mercy's actual costs for each item. If Plaintiff had evidence to prove what she pled – that Mercy's costs for the services in question totaled approximately $2,100 – then she would have evidence to show a potentially huge profit margin to Mercy on its costs. Of course, Mercy might have other expenses to factor in to its charges – payroll, insurance, capital improvements, interest payments and the like – which would have to be reconciled. But at least Plaintiff would have carried her burden of presenting evidence of a *prima facie* case. Instead, Plaintiff has failed to proffer any evidence whatsoever on this issue, except to say that Mercy's "charge-to-cost ratio" for "respiratory therapy" was approximately 578% for the year 2003. *See* DE-181-1 (Suppl. Decl. of Robb Cohen) ¶ 16. That figure, however, does not establish the cost for the particular 51 itemized services in question. At best, a jury would have to infer that because Mercy's charge-to-cost ratio for "respiratory therapy" was 578%, that each of the charges for the 51 individual services were approximately six times costs. Nothing in this record justifies that inference. Plaintiff never explains what services are covered by the category "respiratory therapy," or that the 51 items comprising her bill

are covered by that category. With only the rough global estimate of charges relative to costs, and without any idea of what the actual costs were or what other local hospitals would charge, it would be an entirely speculative undertaking for a jury to determine what charges would be reasonable for the 51 services in question.

### IV. Conclusion

Based on the foregoing, the Court concludes that Plaintiff has failed to come forward with sufficient evidence to defeat Mercy's motion for summary judgment and send this case to a jury. Indeed, at its core Plaintiff has presented little more to support her claims of unreasonable pricing than evidence that Mercy charged her more for her services than it would have charged to Medicare. Such a case is not actionable as a matter of law in Florida. It bears emphasizing that the Court does not rule that Mercy's charges are reasonable, only that Plaintiff has failed to proffer sufficient evidence to send the question to a jury. Accordingly, it is hereby

ORDERED that

(1)  Plaintiff's Motion to Remand [DE-211] is DENIED;

(2)  Mercy Hospital, Inc.'s Motion for Summary Judgment [DE-189] is GRANTED;

(3)  Any pending motions not otherwise resolved are DENIED AS MOOT and this case is CLOSED.

DONE AND ORDERED in Miami, Florida, this 19th day of July, 2007.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
U.S. Magistrate Judge Chris M. McAliley
All Counsel of Record