UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 05-22409-CIV-SEITZ/MCALILEY

BARBARA COLOMAR,

       Plaintiff,

v.

MERCY HOSPITAL, INC., and CATHOLIC HEALTH EAST, INC.,

       Defendants.
_____/

## ORDER AFFIRMING IN-PART AND REJECTING IN-PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S RENEWED MOTION FOR ATTORNEY'S FEES AND GRANTING RENEWED REQUEST FOR COSTS

THIS MATTER is before the Court on the Report and Recommendation of the Honorable Chris McAliley, United States Magistrate Judge [DE-259]. The Magistrate Judge recommends denying Defendant Mercy Hospital's ("Mercy") Renewed Verified Motion for Attorneys' Fees and Costs [DE-236] and Renewed Bill of Costs [DE-237]. Mercy filed a timely Objection to Judge McAliley's recommendation [DE-260]. The Court has carefully reviewed, *de novo*, the Report and Recommendation and Objection thereto, as well as the entire record, pertinent legal authorities, and oral argument at the September 23, 2008 Hearing. As such, the Court shall affirm the denial of fees and costs under the Florida Deceptive and Unfair Trade Practices Act and 28 U.S.C. § 1927, and award the reasonable costs of the litigation to Defendant Mercy Hospital pursuant to Fed. R. Civ. P. 54(d).

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Barbara Colomar, an uninsured individual, was a patient at Mercy Hospital between March 5 and March 6, 2003. (Defendant's Statement of Undisputed Fact, ¶ 1, [DE-190].) After her discharge, Mercy billed Ms. Colomar for approximately $12,863.00 in services rendered. *Id.*, ¶ 2. On or around March 15, 2005, Plaintiff retained Counsel and executed a Rights and Responsibilities Agreement (the "Rights Agreement") in connection therewith. (*See* Rights Agreement, [DE-210-2].) Significantly, the Agreement provided that:

> If we [Counsel] are successful in this litigation, you [Ms. Colomar] will not be obligated for any of our attorneys' fees. In the unlikely event the Court were to award the defendant's fees and costs, we [Counsel] will pay these. *Id.*, ¶ 7.

1

On July 19, 2005, Plaintiff filed a Complaint against Mercy on the basis of the March 2005 medical bill, alleging breach of contract and violation of the Florida Deceptive and Unfair Trade Practices Act, codified at Fla. Stat. § 501.201, *et seq.* (the "FDUTPA") [DE-1].[1] On July 19, 2007, the Court ultimately ruled in favor of Mercy as to the breach of contract and FDUTPA claims [*See* DE-217, 218]. On October 27, 2007, and as prevailing party, Mercy filed the Renewed Motion for Attorneys' Fees and Costs and Renewed Bill of Costs [DE-236, 237].[2] Upon such filing, Mercy also entered into the following stipulation (the "Stipulation"):

> Mercy stipulates that it will only seek to execute or collect on the fees and costs judgment from Plaintiff's counsel, not Plaintiff [DE-236, p.2].

After allowing full briefing on the fee and cost issue, as well as conducting a related March 2008 Motion Hearing [*See* DE-258], Magistrate Judge McAliley recommended denying both the Renewed Motion and Renewed Bill of Costs [*See* DE-259]. On July 22, 2008, Defendant filed an Objection to the Report and Recommendation [DE-260], to which Plaintiff responded on August 6, 2008 [DE-261]. On September 23, 2008, the Court held a Hearing at which Defendant renewed its argument for a fee and cost judgment against Ms. Colomar. Defendant's contentions are addressed below.[3]

II. **ANALYSIS**

Both in prior briefings and at oral argument, Defendant raises three sources of authority in support of the Renewed Motion and Renewed Bill of Costs. Thus, according to Defendant, fees and costs should be

---

[1] Significantly, and as discussed below, Ms. Colomar admitted herself into Baptist Hospital on March 7, 2003, one day after her release from Mercy Hospital. *See* 04-21437-AJ [DE-1]. On June 16, 2004, approximately one-year prior to initiating the instant litigation, Ms. Colomar filed a similar putative class-action complaint against Baptist Hospital arising from allegedly excessive billing practices. *See id.* On February 23, 2005, the Honorable Adalberto Jordan rendered final judgment in favor of Baptist Hospital. *See id.* [DE-86].

[2] Mercy initially filed its request for fees and costs on August 10, 2007 [DE-225, 226]. Those Motions were stayed pending Plaintiff's appeal to the Eleventh Circuit [*See* DE-228]. After Plaintiff dismissed her appeal [DE-235], Defendant filed the Renewed Motion and Renewed Bill of Costs.

[3] In recommending the denial of Defendant's Renewed Motion for Fees and Costs [DE-236] and Renewed Bill of Costs [DE-237], Judge McAliley focused primarily on the Rights Agreement, reasoning that the FDUTPA and Fed. R. Civ. P. 54(d) do not authorize the entry of a fee or cost judgment against a non-prevailing *attorney*. (*See* Report and Recommendation, p.7-9 [DE-259].) However, Defendant's papers make it clear that Mercy Hospital merely seeks to impose a fee and cost judgment against the *non-prevailing party*, Ms. Colomar, and significantly, that such requested relief falls within the express scope of the FDUTPA and Fed. R. Civ. P. 54(d). *See Arcadian Fertilizer, L.P. v. MPW Indus. Serv., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001) (Fed. R. Civ. P. 54(d) costs taxable against non-prevailing party); *Humane Soc. of Broward County, Inc. v. Florida Humane Soc.*, 951 So.2d 966, 968 (Fla. 4th DCA 2007) (FDUTPA fees and costs taxable against non-prevailing party). Therefore, the sole issue proper for adjudication is whether the Court shall, in its discretion, impose fees and costs upon Ms. Colomar in favor of Mercy Hospital. Thus, without a final fee and cost judgment, the determination of the legal effect of the Rights Agreement upon Mercy Hospital's future collection efforts is premature.

2

imposed against Ms. Colomar pursuant to: (1) the FDUTPA; (2) 28 U.S.C. § 1927 ; and (3) Fed. R. Civ. P. 54(d).

### A. Fees and Costs under the FDUTPA

Section 501.2105(1) of the Florida Statutes provides that the prevailing party, in litigation arising from FDUTPA allegations, may recover reasonable attorney's fees and costs from the non-prevailing party.[4] *See* Fla. Stat. § 501.2105(1). Significantly, the award of fees and costs is not mandatory under the FDUTPA, but rather a matter committed solely to the discretion of the trial court. *See Humane Soc. of Broward County, Inc. v. Florida Humane Soc.*, 951 So.2d 966, 968 (Fla. 4th DCA 2007). Thus, the burden is on the moving party to demonstrate an entitlement to fees and costs under the statute. *See CrossPointe, LLC v. Integrated Computing, Inc.*, 2007 WL 1192021, * at 5 (M.D. Fla. 2007) (denying FDUTPA fees where movant failed to meet burden). Furthermore, in exercising such discretion, courts typically balance the following non-exhaustive factors: (1) the scope and history of the litigation; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (4) the merits of the respective positions-including the degree of the opposing party's culpability or bad faith; (5) whether the claim brought was not in subjective bad faith, but was frivolous, unreasonable, or groundless; (6) whether the defense raised a defense mainly to frustrate or stall;[5] and (7) whether the claim brought was to resolve a significant legal question under FDUTPA law. *See Humane Society of Broward County, Inc.*, 951 So.2d at 968. Here, as discussed below, Mercy Hospital has failed to meet its burden under the *Humane Society* factors.

#### 1. The Scope and History of the Litigation

With regard to the first *Humane Society* factor, Defendant argues that "Plaintiff's claims required Mercy to defend itself for two years against allegations covering almost ten years." (Objection, p.7 [DE-260].)

---

[4] Specifically, § 501.2105(1) states:

In any civil litigation resulting from an act or practice involving a violation of this part...the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the non-prevailing party.

[5] As the Parties stipulate to the inapplicability of the sixth *Humane Society* factor, the Court need not undergo that analysis.

Thus, according to Defendant, the extensive nature of Ms. Colomar's claims and the conduct of the litigation warrant the imposition of a fee and cost judgment.

Significantly, while the action has been litigated since 2005, thus generating significant amounts of fees and costs, there is no evidence that Ms. Colomar, or her attorneys, unreasonably multiplied such expenses. In fact, a cursory review of the docket demonstrates that the matter was heavily litigated by all Parties, inclusive of significant discovery and class certification issues [*See* DE-37, 61, 65, 74, 88, 102, 115, 116, 123, 124, 135, 158, 164, 165, 167, 168, 170, 172, 179] as well as numerous Motions to Dismiss [DE-8, 14, 16, 53, 55], Motions for Summary Judgment [DE-53, 189], and an appeal [*See* DE-230]. Further still, the Court frequently granted time-extensions to both Ms. Colomar and Mercy Hospital [*See* DE-2, 6, 20, 48, 65, 85, 119, 124, 139, 153, 194, 195], while allowing Plaintiff leave to amend the Complaint approximately 6-months after the action was filed [*See* DE-37]. Having said that, neither Party should be held solely accountable for the extensive length and scope of the litigation, and accordingly, the Court deems this factor neutral under the fee and cost analysis.

### 2. The Ability of Ms. Colomar to Satisfy an Award of Fees and Costs

As to the second factor, it is undisputed that Ms. Colomar lacks the financial resources to personally satisfy the requested fee and cost judgment. Mercy argues, however, that the Rights Agreement executed by Plaintiff and her attorneys enables Ms. Colomar to satisfy the judgment through her respective Counsel.[6] Further, had Plaintiff individually, or as class representative, been the prevailing party, her Counsel presumably would have sought their fees and costs under § 501.2105(1) of the FDUTPA. Defendant's Counsel references a seven figure attorney's fees award, garnered in a similar California class-action that settled without significant litigation efforts, to suggest that Plaintiff's Counsels' interest in attorney's fees lay at the heart of the fee-shifting promise which induced Ms. Colomar to proceed with the action. Thus the argument goes, that if Counsels' motive was a significant fee award, it should also bear the risk of loss, in

---

[6] Rule 4-1.8 of the Florida Bar Rules of Professional Conduct creates an indigent client exception to the general rule prohibiting lawyers from providing clients with financial assistance in connection with pending or contemplated litigation. *See* Florida Bar Rule 4-1.8(e)(2).

4

order to curb fee motivations from affecting an objective merits analysis and litigation tactics of a case. Therefore, according to Mercy, Plaintiff "can satisfy such a judgment because she has an agreement requiring another party (her counsel) to pay any award of fees and costs entered against her in the specific litigation brought by the Plaintiff." (Objection, p.8 [DE-260].)

As such, the gravamen of Defendant's argument clearly turns on Mercy's ability to enforce the Rights Agreement as an *intended* third-party beneficiary. *See Rebman v. Follett Higher Educ. Group, Inc.*, 248 F.R.D. 624, 630 (M.D. Fla. 2008) ("intended beneficiaries...have a right to sue for enforcement of the contract") (quotations omitted). Plaintiff, on the other hand, classifies Mercy as a mere *incidental* beneficiary under the Rights Agreement, with no standing to enforce the related fee provisions.[7] *See Metropolitan Life Ins. Co. v. McCartson*, 467 So.2d 277, 279 (Fla. 1985) (incidental third-party beneficiaries may not enforce contract). Despite the Parties' various contentions, however, final adjudication of Mercy's rights under the Agreement is premature, not only because the relevant evidence is not yet a matter of record, but also because of the absence of a final fee judgment or judgment debtor. Thus, to accept either Party's argument at this juncture would constitute an improper advisory opinion.

Having said that, both Plaintiff and Defendant currently set forth viable theories as to the scope and enforceability of the Rights Agreement, with significant issues of fact and law necessary for proper resolution. Thus, turning to the second *Humane Society* factor, the Court merely observes that Ms. Colomar may, in the future, *potentially* satisfy the requested fee and cost judgment through her Counsel. As such, this factor weighs equally in favor of both Parties, and remains neutral under the fee and cost analysis.

### 3. Whether an Award of Fees Against the Opposing Party Would Deter Others from Acting in Similar Circumstances

Defendant argues that "Plaintiff and her counsel should be deterred from pursuing these plainly unfounded unfair pricing claims against hospitals such as Mercy." (Objection, p.9 [DE-260].) In support, and as noted above, Defendant highlights the fact that Ms. Colomar admitted herself into Baptist Hospital on

---

[7] In addition, Plaintiff also argues that the Statute of Frauds, codified at Fla. Stat. § 725.01, precludes enforcement of the fee provision, because Plaintiff's Counsel did not sign the Rights Agreement. (*See* Opposition to Motion for Attorney's Fees and Costs, p.6, [DE-244].

5

March 7, 2003 and subsequently initiated a similar putative-class action complaint against Baptist shortly thereafter. *See* 04-21437-AJ [DE-1]. Defendant also alludes to alleged offers to Ms. Colomar to be treated as a charity care patient,[8] as well as to similar nationwide class-action proceedings, against defendant hospitals, whose settlements included substantial fee awards, even in the absence of significant litigation efforts. *See e.g. Dancer v. Catholic Health Care West*, Superior Court of California, CGC-05-445624-January 11, 2007 (awarding $1.275 in attorney's fees). The Court fully agrees that deterrence measures may appropriately be applied to opportunistic plaintiffs pursuing improper motivations.[9] Furthermore, the Court recognizes that this litigation, over a $12,863.00 charge, has had a significant financial impact against a non-profit hospital that is an important provider of quality medical care for the indigent in this community, and that the expenditure of over three-quarters of a million dollars on litigation expenses has had a detrimental effect on Defendant's ability to serve the poor.

As discussed at the Hearing, however, imposition of a prevailing-party fee judgment, especially one of the size Mercy now requests, will certainly, at least to some degree, deter future plaintiffs from pursuing meritious consumer-claims. Thus, a consumer who truly suffers $12,863.00 in damages may forgo her FDUTPA claim simply in aversion to a potential adverse fee judgment, regardless of the probability of victory or relative merits of the dispute. Clearly, the Florida legislature did not enact the FDUTPA fee provisions to stifle or insulate defendants from meritious consumer lawsuits.

Therefore, in balancing the Parties' proffered interests, and specifically, the desire to minimize

---

[8] On this point, Plaintiff recently submitted portions of her deposition testimony which refute the claim that she knowingly rejected Mercy Hospital's charity care policy. (*See* Plaintiff's Supplemental Submission, [DE-266].

[9] At the September 23, 2008 Hearing, Plaintiff's Counsel suggested that Ms. Colomar's true motivation for bringing this litigation stemmed from her desire to change Mercy Hospital's overarching billing practices with regard to the uninsured. There is, however, no meaningful record evidence to support this contention. Had Counsel simply memorialized such a policy demand in writing, there could be no question as to Ms. Colomar's true intentions.

On the other hand, while the Court is well-aware of Ms. Colomar's litigation record, there is equally no evidence of bad faith motive or vexatious conduct on the part of Plaintiff or her Counsel. The legal issues in this case reflected a national debate as to hospitals' general billing practices for the uninsured. Furthermore, and as noted at the September 23, 2008 Hearing, Ms. Colomar has entered into a payment plan with Mercy Hospital, and duly remitted a substantial portion of the original $12,863 debt. Further still, Plaintiff's Counsel suggested that Ms. Colomar's subsequent admission to Baptist Hospital arose from fear of the aggressive collection efforts employed by Mercy Hospital at the time of her treatment.

frivolous lawsuits while not deterring plaintiffs with meritorious claims, the Court finds that the third *Humane Society* factor results in a neutral outcome. This conclusion is bolstered by the fact that Mercy Hospital bears the burden to demonstrate its entitlement under the *Humane Society* analysis; thus, on this record, the Court simply may not conclude that Plaintiff's conduct warrants upwards of $858,108.74 in deterrence fees and costs.

### 4. The Merits of the Respective Positions - Including the Degree of Ms. Colomar's Culpability and Bad Faith

As to the fourth *Humane Society* factor, Defendant contends that "Mercy prevailed in this case on summary judgment and...Plaintiff never came forward with any evidence of the type that the Court had identified in its previous rulings as necessary to prove that Mercy charged Plaintiff more than a reasonable amount." (Objection, p.10 [DE-260].) Contrary to Defendant's argument, however, the record merely demonstrates that Plaintiff failed, through her discovery efforts, to collect sufficient evidence to prevail on Defendant's Motion for Summary Judgment. As Mercy can point to no meaningful evidence that Plaintiff litigated the action in bad faith, other than reiterating the fact that Defendant ultimately prevailed at summary judgment, the fourth *Humane Society* factor weighs in favor of Ms. Colomar.

### 5. Whether the Claim was Frivolous, Unreasonable or Groundless

Under the fifth *Humane Society* factor, Defendant raises the similar argument that "Plaintiff and her counsel failed to properly investigate the facts of this case prior to filing...Plaintiff and her counsel amended the Complaint against Mercy to include unsupported factual allegations with not a shred of supporting evidence." (Objection, p.11 [DE-260].) As noted above, however, the record does not indicate that Ms. Colomar proceeded in bad faith, or for that matter, knowingly asserted groundless claims. Indeed, two pieces of evidence necessary to Plaintiff's case, namely the relevant market price for similar hospital services and Mercy's internal cost structure, could only be uncovered and verified *after* discovery. Thus, on this record, Defendant has failed to meet its burden to demonstrate the unreasonableness or frivolousness of Plaintiff's claims. Accordingly, the fifth *Humane Society* factor also weighs in favor of Ms. Colomar.

### 6. Whether the Claim Brought was to Resolve a Significant Legal Question Under the FDUTPA

This litigation squarely addressed a number of unresolved legal questions, inclusive of: (1) whether an open-priced hospital contract may satisfy the "deceptive" or "unfair practice" element of the FDUTPA; and (2) whether a hospital's internal costs structure is a relevant factor in determining unreasonable pricing. *See Urquhart v. Manatee Memorial Hosp.*, 2007 WL 781738, * at 5 (M.D. Fla. 2007) ("[t]his Court finds the reasoning in *Colomar* to be persuasive and adopts the rule...that deception as defined under the FDUTPA does not occur simply because a pricing term in an open pricing agreement is left undefined."). Thus, given the complexity of the litigation, as well as the resolution of various issues arising from the FDUTPA, the final *Humane Society* factor clearly weighs in favor of Ms. Colomar.[10]

In conclusion, while the Court finds that factors one through three weigh neutrally between the Parties, the remaining *Humane Society* factors weigh in favor of Ms. Colomar. As such, Defendant has failed to meet its burden under § 501.2105(1), and the Court shall deny fees and costs under the FDUTPA.[11]

### B. Fees and Costs under 28 U.S.C. § 1927

As its second argument, Mercy seeks fees and costs pursuant to 28 U.S.C. § 1927. That statute provides that:

> Any attorney...who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

Thus, the statute delineates three requirements to justify the imposition of fee and cost sanctions: (1) unreasonable and vexatious conduct; (2) that the unreasonable and vexatious conduct multiplied the

---

[10] It bears noting that Orders issued in this matter have been cited by sister courts and various legal treatises. *See Cooper v. R.J. Reynolds Tobacco Co.*, 2008 WL 4093715, at *6 (M.D. Fla. 2008); *Clausnitzer v. Federal Exp. Corp.*, 2008 WL 4194837, at *1 (S.D. Fla. 2008); Wright & Miller: Federal Prac. & Proc. s 3601, s 3705; FL Jur. 2d Hospitals & Nursing Homes s 9. Patient's rights and responsibilities (2008); McLaughlin on Class Actions s 12:1, Introduction and effective date (2008).

[11] As a final note, Mercy Hospital filed the unopposed affidavit of Gerald Wald, Esq., who attested to the reasonableness of Defendant's requested fee award [DE-225-3]. However, even if the *Humane Society* analysis favored Defendant, the Court would still have the responsibility to award only a *reasonable* amount of fees. *See M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 30 F.3d 113, 115 (11th Cir. 1994) (under FDUTPA, "trial court has the authority to determine the entitlement to and the amount of attorney's fees"). Thus, the Court would have to carefully assess whether this litigation warranted an approximate $822,702.50 to defend the action.

proceedings; and (3) that the amount of the sanction does not exceed the costs occasioned by the objectionable conduct.[12] *See McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001).

Here, Defendant fails to identify behavior or litigation tactics rising to the level of unreasonable or vexatious conduct. Simply because the Court ultimately ruled in favor of Mercy Hospital does not demonstrate that Plaintiff proceeded in bad faith or unreasonably multiplied the litigants' costs and expenses. *See Wolff v. Jefferys*, 2005 WL 5955723, * at 4 (M.D. Fla. 2005) ("something more than a lack of merit is required to award sanctions for unreasonably and vexatiously multiplying under § 1927") (citing *McMahan*, 256 F.3d at 1129). Accordingly, and in the absence of additional evidence, Defendant's § 1927 request must be denied.

### C.  Costs Under Fed. R. Civ. P. 54(d)(1)

Mercy seeks to recover $35,406.24 in costs from Plaintiff pursuant to Fed. R. Civ. P. 54(d)(1). Under that rule, a prevailing party may collect authorized costs, other than attorney's fees, unless otherwise directed by the court or governing law.[13] *See Arcadian Fertilizer, L.P. v. MPW Indus. Serv., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001). Although Rule 54(d) "generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party," *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987), "such discretion is not unfettered." *See Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995). Instead, there exists "a presumption that costs are to be awarded to a prevailing party...To defeat the presumption and deny full costs, a district court must have and state a sound basis for doing so."[14] *Chapman v. AI Transport*, 229 F.3d 1012,

---

[12]  The term "vexatious" has been defined as a "lawsuit instituted maliciously and without good cause." *See Perry v. Orange County*, 341 F. Supp. 2d 1197, 1205-1206 (M.D. Fla. 2004). Thus, the purpose of § 1927 is to deter frivolous litigation and abusive practices, as well as to ensure that those responsible bear the related costs. *See O'Rear v. American Family Life Assurance Co. of Columbus, Inc.*, 144 F.R.D. 410, 413 (M.D. Fla. 1992).

[13]  Thus, Fed. R. Civ. P. 54(d) provides: "Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs..."

[14]  Significantly, while a court may consider the non-prevailing party's financial circumstances in determining the amount of costs to be awarded, a court may not decline to award any costs at all. *Chapman v. AI Transport*, 229 F.3d 1012, 1039 (11th Cir. 2000). Further still, there must be clear proof of the non-prevailing party's dire financial circumstances before that factor can be considered. *Id.* Here, while the Parties have agreed that Ms. Colomar is of limited financial means, Plaintiff has failed to file clear documentary of her dire financial circumstances.

9

1038-39 (11th Cir. 2000).

Within this context, and given the strong presumption in favor of prevailing parties, Mercy is therefore entitled to the following costs, totaling $8,268.46: (1) fees of the clerk and marshal (here $175 in private process fees); (2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case (here $7,114.96); (3) fees and disbursements for printing and witnesses (here $86.00); and (4) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services (here $892.50). *See* 28 U.S.C. § 1920.

Having said that, Mercy also attempts to recover approximately $27,137.78 in copying costs. *See id.* Significantly, however, such costs are recoverable only if the copies were "necessarily obtained for use in the case." *See E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 622-23 (11th Cir. 2000). Thus, copy costs are not recoverable if the copies were made merely for counsel's convenience, *see For Play Limited v. Bow to Stern Maintenance, Inc.*, 2006 WL 3662339, * at 11 (S.D. Fla. 2006), or merely constituted general copying. *See Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996). In addition, the movant has the burden to demonstrate that copies were necessarily obtained for use in the case. *For Play*, 2006 WL 3662339, * at 11.

Here, Defendant has submitted no evidence from which the Court can determine that the photocopies at issue were necessarily obtained for use in the litigation. Instead, Defendant merely offers attorney and paralegal time-records, which according to Defendant, "substantiate exactly what case-specific work was being performed and exactly when the work was being performed that required photocopies."[15] (Mercy's Reply to Bill of Costs, p.7 [DE-256].) Mercy's argument misses the mark, however, as no amount of time-records can distinguish photocopies necessarily obtained for use in the case, from those created as a matter of convenience.

Thus, while some of the requested copy costs might be reasonable, the Court does not have the duty to independently substantiate Mercy's claims, let alone partake in guesswork as to the proper amount of copying costs. As such, Defendant has failed to meet its burden and no copying costs shall be awarded. *See Scelta v.*

---

[15] At the September 23, 2008 Hearing, the Court requested that Defendant file supplemental documentation regarding the requested copying costs. Defendant subsequently submitted a Notice referring the Court to various sections of prior briefings [DE-265].

10

*Delicatessen Support Services, Inc.*, 203 F. Supp. 2d 1328, 1340 (M.D. Fla. 2002) (rejecting requested copying costs in entirety as "defendants' substantiation and description of their photocopying expenses consists of each firm's billing records which merely state 'copies' or 'photocopies.' Conspicuously missing from these billing records is any description of the nature or purpose of the photocopying."). Therefore, excluding the requested $27,137.78 in copying costs, Defendant is entitled to a final cost judgment against Ms. Colomar in the amount of $8,268.46.

III. **CONCLUSION**

Accordingly, for the reasons stated above, it is hereby

ORDERED that

(1)    The Report and Recommendation of the Honorable Chris McAliley, United States Magistrate Judge [DE-259] is AFFIRMED IN-PART AND REJECTED IN-PART; and

(2)    Defendants Renewed Verified Motion for Attorneys' Fees and Costs [DE-236] and Renewed Bill of Costs [DE-237] are GRANTED IN-PART AND DENIED IN-PART. Defendant Mercy Hospital is entitled to a final cost judgment against Plaintiff Colomar, pursuant to Fed. R. Civ. P. 54(d), in the amount of **$8,268.46** to be memorialized in a Final Judgment issued concurrently herewith; and

(3)    All pending motions not otherwise ruled upon are DENIED AS MOOT and this case remains CLOSED.

DONE AND ORDERED in Miami, Florida, this 26th day of September, 2008.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
Magistrate Judge McAliley
Counsel of Record